## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **COLOMBO CANDY & TOBACCO WHOLESALE CO., d/b/a Colombo Distribution,** | ) ) ) | **CASE NO. 8:13CV148** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **v.** | ) | **AND ORDER** |
| | ) | |
| **AMERISTAR CASINO COUNCIL BLUFFS, INC.,** | ) ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **UNION INSURANCE,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

This matter is before the Court on the Defendant's Motion to Dismiss (Filing No. 13.) For the reasons discussed below, the Motion will be granted in part.

### FACTUAL AND PROCEDURAL HISTORY

Colombo Candy & Tobacco Wholesale Co. ("Colombo") brought this action against Ameristar Casino Council Bluffs, Inc. ("Ameristar") in the District Court of Douglas County, Nebraska, alleging that Colombo's former employee "Jane Doe" gambled away over four million dollars in embezzled funds at Ameristar's casino in Council Bluffs, Iowa. Ameristar removed the action to this Court, invoking the Court's diversity jurisdiction, and requesting trial by jury in Omaha, Nebraska, "[i]n the event the Court deems jurisdiction and venue proper[.]" (Notice of Removal and Designation of Place for Trial, Filing No. 1 at 4.) Union Insurance intervened, asserting that it is subrogated to the rights of Colombo, because Union Insurance paid $100,000.00 to, or on behalf of, Colombo, pursuant to a policy of insurance that provided "dishonest employee coverage." (Filing No. 29.)

Ameristar moved to dismiss Colombo's Second Amended Complaint (Filing No. 1 at 63-86, hereafter "the Complaint"), asserting that this Court lacks personal jurisdiction over Ameristar; venue is improper in the District of Nebraska; and Colombo failed to state a plausible claim upon which relief can be granted.  (Motion to Dismiss, Filing No. 13.) Ameristar later withdrew its motion as it related to the Court's lack of personal jurisdiction. (Filing Nos. 34, 36.)

For purposes of the pending motion, the Court accepts as true all well-pled facts in Colombo's Complaint, though the Court need not accept Colombo's conclusions of law. Below is a summary of the facts, as pled in the Complaint.

Colombo is a Nebraska corporation with its principal office in Omaha, Nebraska. Ameristar operates a casino in Council Bluffs, Iowa, and has its principal office in that city. Jane Doe ("Doe") worked for Colombo as its controller from July 2010 to July 2012, during which time she embezzled or stole and disposed of over four million dollars belonging to Colombo.  Doe deposited the embezzled funds into her own accounts, against which she cashed checks, made cash withdrawals, effected check card transactions, and otherwise transferred money at Ameristar.  Colombo contends that Ameristar had information that would lead a reasonable person to believe that Doe was using stolen or embezzled funds to support her gambling problem, and that Ameristar intentionally enticed and enabled her to gamble extraordinary amounts of money so as to enrich Ameristar and its staff members.

Colombo presents four theories of recovery.  First, it asserts that Ameristar aided and abetted Doe's tortious conduct, i.e., the embezzlement, by inducing her to gamble, thereby encouraging her unlawful procurement of funds.  Second, it asserts that Ameristar

2

aided and abetted Doe's breach of fiduciary duty to Colombo in the same manner.  Third, it asserts that Ameristar did not take the transferred property, *i.e*., the embezzled funds, in good faith, and therefore the transfers were fraudulent and avoidable under Nebraska's Uniform Fraudulent Transfer Act, Neb. Rev. Stat. § 36-701 *et seq*.  Fourth, Colombo asserts that Ameristar was unjustly enriched at Colombo's expense and that the funds transferred to Ameristar through Doe should be held in a constructive trust for Colombo's benefit, or Colombo should receive restitution of such sums from Ameristar.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "'Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions.'" *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v.*

3

*Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)).  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice."  *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'"  *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)).

When ruling on a defendant's motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6), a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests."  *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679 (citing *Twombly,* 550 U.S. at 556).  "Determining whether a

4

complaint states a plausible claim for relief will . . . be a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

### Venue

A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d).

Because Ameristar has waived its challenge to personal jurisdiction in the District

of Nebraska, venue in this district is proper under 28 U.S.C. § 1391. Ameristar has not

asserted that venue should be transferred for the convenience of the parties and witnesses

under 28 U.S.C. § 1406 (a) (allowing transfers "in the interest of justice"), nor would any

such assertion have merit. Ameristar is located in the Omaha metropolitan area, in close

proximity to the Omaha federal courthouse, and the events or transactions giving rise to

Colombo's claims all occurred in the Omaha metropolitan area.

5

**Conflicts of Law**

As a court sitting in diversity jurisdiction, this Court will apply the law that the forum state, Nebraska, would apply.  See *In re Levaquin Products Liab. Litig.*, 700 F.3d 1161, 1165 (8th Cir. 2012).

In Nebraska, "[t]he first step in a conflict-of-law analysis is to determine whether there is an actual conflict between the legal rules of different states.  Before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."  *Christian v. Smith,* 759 N.W.2d 447, 458 (Neb. 2008).  "An actual conflict exists when a legal issue is resolved differently under the law of two states."  *Heinze v. Heinze*, 742 N.W.2d 465, 467 (Neb. 2007).

There is no conflict between the laws of Iowa and Nebraska regarding Colombo's claims that would result in a legal issue being resolved differently, under the facts as alleged in this case.  Both states follow the Restatement (Second) of Torts § 876 (1979) to resolve civil "aiding and abetting" claims; both states have adopted the Uniform Fraudulent Transfer Act; and both states follow common law rules regarding equitable claims for unjust enrichment.

**Aiding and Abetting Claims**

The elements for a civil claim based on aiding and abetting, as relevant to this action, are set out in the Restatement (Second) of Torts § 876 (b) (1979):

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> . . . .

6

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]

Accordingly, Colombo must prove: (1) Doe committed tortious conduct; (2) Ameristar knew that Doe's conduct constituted a breach of duty; and (3) Ameristar gave Doe substantial[1] assistance or encouragement.

There is no dispute as to the first element: Doe embezzled money from Colombo and breached her fiduciary duties.  With respect to the second element, the Court will assume, for purposes of the pending motion, that discovery may reveal that Ameristar "had information that would lead a reasonable person to believe the money Doe was using to gamble was embezzled or stolen" (Complaint, Filing No. 1 at CM/ECF p. 66) and "deliberately closed its eyes to the source of Doe's funding" (*id.* at 67).  The factual allegations in the Complaint, however, fail to satisfy the third element of a claim for aiding and abetting, because Ameristar did not assist or encourage Doe's commission of the tortious conduct itself.

"As a general rule, one who counsels, commands, directs, advises, assists, or aids and abets another individual *in commission of a wrongful act or tort* is responsible to the injured party for the entire loss or damage."  *Bergman v. Anderson*, 411 N.W.2d 336, 340 (Neb. 1987) (emphasis added).  The Nebraska Supreme Court has approved the following jury instruction:

---

[1] Colombo disputes that the encouragement must be "substantial," citing *Bergman v. Anderson*, 411 N.W.2d 336, 341 (Neb. 1987), but nonetheless asserts that Ameristar's assistance or encouragement in this case clearly was "substantial."  The Court declines to determine whether there is a conflict in the legal standard applied by Nebraska and Iowa on this point, because the Court concludes that the assistance or encouragement provided by an aider/abettor must be directed to the commission of the tortious conduct itself, and not simply the creation of a motive for the conduct.

7

>Aiding and abetting involves *some participation in the unlawful act* and must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that any physical part in the commission of the unlawful act is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient.

*Id.* at 338 (emphasis added).

The Iowa Supreme Court has given § 876 (b) a similar interpretation: "If the encouragement or assistance is a *substantial factor in causing the resulting tort*, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." *Heick v. Bacon*, 561 N.W.2d 45, 52 (Iowa 1997) (emphasis in original).

Here, Colombo's Complaint alleges that Doe transferred embezzled funds into her own accounts, and then drew upon those accounts to fund her gambling. It is not alleged that Ameristar participated in Doe's unlawful acts of embezzlement nor her breaches of fiduciary duty. Neither is it alleged that Ameristar encouraged her to commit such unlawful acts, except by providing her with a motive to steal, *i.e.*, the opportunity to gamble.

Both parties refer the Court to *Camp v. Dema,* 948, F.2d 455 (8th Cir. 1991)[2], a decision based not on § 876 (b), but on aiding and abetting securities fraud under 15 U.S.C. § 78j (1981) and 17 C.F.R. § 240.10b-5 (1991) (SEC 10b and Rule 10b-5). Proof of such a claim requires (1) a primary violation, (2) knowledge of the primary violation on the part of the aider/abettor, and (3) substantial assistance by the aider/abettor in the

---

[2] As a matter of historical interest only, the undersigned was the "competent counsel" who represented the plaintiff in "various lawsuits against CPI, Dema and Millwee," including the securities fraud action, prior to oral argument before the U.S. Court of Appeals. *Camp v. Dema,* 948 F.2d at 462-63. The undersigned expresses no personal opinion as to the accuracy of the Eighth Circuit's characterization of plaintiff's counsel, nor any of its other findings and conclusions.

8

achievement of the primary violation.  *Id*. at 459.  To the extent the holdings in *Camp* provide guidance in this case, they are helpful to Ameristar.

"For aiding and abetting liability, the knowledge element is critical."  *Id*. at 459. "Recklessness satisfies the knowledge requirement where the defendant owes a duty[3] of disclosure to the plaintiff."  *Id*.  "Negligence, however, is never sufficient."  *Id*.  "[T]his knowledge requirement also permeates the third element of our test," in that "[t]he defendant must have some degree of knowledge that his actions are aiding the primary violator."  *Id*. at 459-60.  "[I]f the defendant has a duty to disclose, the court may deem recklessness in failing to disclose information as substantial assistance."

In *Camp,* the Eighth Circuit held that although retained counsel for a closely held corporation may have been grossly negligent when he ignored written notice of a fraud perpetrated on a minority shareholder, and the lawyer then assisted directly in effecting the fraud, his actions did not support a claim for aider/abettor liability, because he owed no duty to the minority shareholder.  *Id*. at 458, 463-64.  In the absence of a duty owed to the plaintiff by the defendant in an action based on aiding and abetting, the plaintiff must prove not only that a defendant received notice of the tortious conduct, but that the defendant

---

[3] "Where neither state nor federal law has established a duty, the court may still find one by examining five nonexclusive factors under the following test: 1. the relationship of the defendant to the plaintiff; 2. the defendant's access to information relative to the plaintiff's; 3. the benefits derived by the defendant in the relationship with the plaintiff; 4. the defendant's awareness of plaintiff's reliance; and 5. the defendant's activity in initiating the transaction in question."  *Camp*, 948 F.2d at 460.  Based on the facts presented in the Complaint, no duty running from Ameristar to Colombo can be inferred.

9

was in fact *aware*[4] of the tortious conduct he aided and abetted, and that he *knew* his actions were aiding the primary violator.  If a defendant *does* owe a duty to the victim, then the defendant's "severe recklessness" may satisfy these scienter requirements.  *Id*. at 459-61.  Here, where Ameristar owed no duty to Colombo, the allegations in the Complaint fail to satisfy both the second and third prongs of a claim for aiding and abetting, applying the *Camp* framework.

In *Camp,* the Eighth Circuit Court also expressed concern for "'the potentially devastating impact aiding and abetting liability might have on commercial relationships,'" *Id*. at 461, quoting *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1009 (11th Cir.1985).  That concern is equally applicable here, where Colombo suggests that businesses may have a common-law duty to question or investigate the origin of funds spent by customers, in order to protect third-party victims of the customers' wrongful conduct.

**Avoidance and Recovery of Fraudulent Transfers**

Neb. Rev. Stat. § 36-705 (Reissue 2008) provides, in pertinent part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

[4]  Although in *Camp*, it was undisputed that the defendant attorney received written notice of the fraud before he assisted in effecting that fraud, the attorney's statement that he did not review the material he received was sufficient to support summary judgment in his favor, as the plaintiff could not prove the attorney's awareness of the fraud.  The district court determined there were no issues of credibility to be decided by a jury, and the Court of Appeals agreed.

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(I) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

The facts alleged in the Complaint demonstrate that Doe's transfers of funds to Ameristar were fraudulent as to Colombo.  Accordingly, as a creditor under the Uniform Fraudulent Transfer Act, Colombo may seek avoidance of the transfers to the extent necessary to satisfy its claims against Doe.  Neb. Rev. Stat. § 36-708 (Reissue 2008).  The transfers of funds from Doe to Ameristar are not voidable if Ameristar "took in good faith and for a reasonably equivalent value or [was a] subsequent transferee or obligee" who took in "good faith" and "for value."  Neb. Rev. Stat. § 36-709 (a), (b).

Ameristar contends that it was a "subsequent transferee" under the Uniform Fraudulent Transfer Act, and need only demonstrate that it took the funds in good faith and "for value."  Colombo contends that Ameristar was a "transferee," and must demonstrate that it took the funds in good faith and "for a reasonably equivalent value."  Based on the facts as alleged in the Complaint, Doe's embezzlement of funds from Colombo created the debt Doe owed to Colombo, the creditor.  Ameristar was a transferee of the funds from the debtor, Doe, and was not a "subsequent transferee."  Accordingly, Ameristar must demonstrate that it took the funds "in good faith" and "for a reasonably equivalent value."  The Complaint states a plausible claim under the Uniform Fraudulent Transfer Act, and Ameristar will be required to respond to that claim.

11

**Unjust Enrichment**

Ameristar contends that lawful gambling affords the gambler and opportunity to win, which is consideration for the bet placed, and, therefore, Ameristar was not unjustly enriched by Doe's gambling of embezzled funds.

To recover on a claim for unjust enrichment in Nebraska, "the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006).

To prevail on an unjust enrichment theory in Iowa, a plaintiff must prove three elements: (1) the defendant was enriched by receiving a benefit; (2) the enrichment was at the plaintiff's expense; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001).

Colombo's claim based on unjust enrichment is one in equity, and the facts presented in the Complaint state a plausible claim. Ameristar will be required to respond to that claim.

Accordingly,

IT IS ORDERED:

1.  Defendant Ameristar Casino Council Bluffs, Inc.'s Motion to Dismiss (Filing No. 13) is granted in part, as follows:

a.  Plaintiff Colombo Candy & Tobacco Wholesale Co.'s claim based on Aiding and Abetting Doe's Tortious Conduct (Count I of the Second Amended Complaint) is dismissed;

b.  Plaintiff Colombo Candy & Tobacco Wholesale Co.'s claim based on Aiding and Abetting Doe's Breach of Her Fiduciary Duty (Count II of the Second Amended Complaint) is dismissed;

and the motion is otherwise denied;

2.  Intervenor Union Insurance's Motion for Joinder in Plaintiff's Reply Brief and Index of Evidence in Opposition to Defendant's Motion to Dismiss (Filing No. 39) is granted;

3.  Defendant Ameristar's Motion for Leave to Present Oral Argument in Support of Motion to Dismiss (Filing No. 26) is denied; and

4.  Defendant Ameristar will respond to the remaining claims presented in the Second Amended Complaint on or before October 1, 2013.


DATED this 19th day of September, 2013.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge

13